**IN THE UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | | |
|---|---|---|
| MARK F. FOTH, | ) | CASE NO. 1:21-CV-01429-JG |
| | ) | |
| Plaintiff, | ) | JUDGE JAMES S. GWIN |
| | ) | UNITED STATES DISTRICT JUDGE |
| v. | ) | |
| | ) | MAGISTRATE JUDGE |
| COMMISSIONER OF SOCIAL SECURITY, | ) | JENNIFER DOWDELL |
| | ) | ARMSTRONG |
| Defendant. | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| | ) | |

## I.    INTRODUCTION

Plaintiff Mark Foth ("Foth") seeks judicial review of the final decision of the Commissioner of Social Security denying his application for Disability Insurance Benefits ("DIB"). This matter is before me pursuant to 42 U.S.C. §§ 405(g), 1383(c)(3), and Local Rule 72.2(b). (*See* ECF non-document entry dated 09/06/2022). For the reasons set forth below, I RECOMMEND that the Court AFFIRM the Commissioner's decision.

## II.    PROCEDURAL HISTORY

On September 29, 2015, Foth filed an application for DIB, alleging a disability onset date of August 28, 2014. (ECF Doc. No. 6, Exhibit 10D, PageID # 376). In his application, Foth alleged that he is unable to work as a result of the following medical conditions: (1) neuropathy; (2) Type II diabetes; (3) deep vein thrombosis; (4) lumbar vertebral fracture; and (5) gout. (ECF Doc. No. 6, Exhibit 1D, PageID # 349).

The Social Security Administration ("SSA") denied Foth's application initially and upon reconsideration, and Foth requested a hearing before an administrative law judge ("ALJ"). (ECF Doc. No. 6, Exhibit 2A, PageID # 125; *id.* at Exhibit 5A, PageID # 141; *id.* at Exhibit 6B, PageID

# 199). On June 13, 2018, an ALJ held a hearing during which Foth, represented by counsel, and an impartial vocational expert ("VE") testified. (ECF Doc. No. 6, PageID # 88-117). On July 18, 2018, the ALJ issued a written decision finding that Foth is not disabled. (*Id.* at Exhibit 8A, PageID # 158-75).

The Appeals Council vacated and remanded the ALJ's decision for the ALJ to evaluate the treating source opinion from Kiin Kim, M.D., and to determine whether Foth's obesity constitutes a severe impairment. (ECF Doc. No. 6, Exhibit 9A, PageID # 182). On remand, a different ALJ held a hearing on December 18, 2019, during which Foth, represented by counsel, and a VE testified. (ECF Doc. No. 6, PageID  # 70-87). That ALJ issued a written decision on February 4, 2020, finding that Foth is not disabled. (*Id.* at PageID # 48-63). Relevant to this proceeding, the ALJ determined that Foth's lumbar spine impairment and depressive disorder are not severe impairments. (*Id.* at PageID # 54-55).  The ALJ's decision became final on May 21, 2021, when the Appeals Council declined further review. (*Id.* at PageID # 37).

On July 23, 2021, Foth filed his Complaint to challenge the Commissioner's final decision. (ECF Doc. No. 1). The parties have completed briefing in this case. (ECF Doc. Nos. 11, 15, and 16). Foth asserts the following assignments of error:

(1) The ALJ erred in rejecting the RFC opinion of orthopedic specialist Dr. Kiin Kim. The analysis was flawed because it disregarded substantial evidence of the underlying severity of the claimant's chronic lumbar compression fractures, and resulted from a failure to apply the factors outlined in 20 CFR 404.1527(c). This error is interrelated with the error committed when failing to find the chronic lumbar compression fractures and cervical degenerative disease to constitute severe impairments at Step 2 of the sequential evaluation process.

(2) The ALJ erred in failing to find the claimant's major depressive disorder to be a severe impairment at Step 2 of the sequential evaluation process. The claimant's major depressive disorder presents more than a minimal impairment in the claimant's ability to maintain work-related mental functioning, making it error to conclude there were no restrictions in the four broad functional areas.

(ECF Doc. No. 11, PageID # 3187, 3191).

### III.    BACKGROUND

#### A.    <u>Personal, Educational, and Vocational Experience</u>

Foth was 61 years old on the alleged onset date. (ECF Doc. No. 6, Exhibit 10D, PageID # 376). Foth served in the military from 1973-1976, and got "[t]o [his] senior year in college."  (ECF Doc. No. 6, PageID # 73-74). Foth worked as a bookkeeper "for about 35, 40 years," but stopped working in 2014 because the company he worked for went bankrupt and laid off all of its employees. (*Id.* at PageID # 76-77). Soon thereafter, Foth "broke [his] back" after he tripped on steps while carrying groceries. (*Id.* at PageID # 76). In 2016, Foth moved in with his mother and took care of her until her death in 2018. (*Id.* at PageID # 77).

#### B.    <u>Relevant Hearing Testimony</u>

##### *1.    Foth's Testimony*

At the hearing on remand, Foth testified that, while living with his mother, he took her to her doctors' appointments, cleaned the house, and made all of the meals. (ECF Doc. No. 6, PageID # 78-79). Foth testified that his mother had a few minor falls during that time, and that he called the paramedics to help her because he was concerned he would injure his back again if he tried to help her. (*Id.* at PageID # 79).

Foth testified that he is unable to return to his past work as a bookkeeper because he cannot lift the 20-50 pound boxes that he used to lift four or five times per year. (*Id.* at PageID # 80). Foth also testified that "the whole time [he] was working" he drank a couple of alcoholic drinks each night, that he has cirrhosis of the liver, and that he has now stopped drinking. (*Id.*). When asked how he was doing with treatment for his back, Foth responded that he was "pretty much on [his] own." (*Id.* at PageID # 83). Foth testified that once he competed a six-week treatment program for his back, he could not find a gym that had the same equipment that he used during treatment, so he gradually started getting worse. (*Id.* at PageID # 83). Foth testified that his balance is "the

biggest problem[,]" and that he cannot walk on a treadmill without getting off balance. (*Id.* at PageID # 84). Foth testified that he tried using a cane, but it "was throwing [him] off more than helping" him. (*Id.*).

The ALJ summarized some of Foth's additional hearing testimony as follows:

The claimant testified at the hearing that he last worked in 2014 as a Bookkeeper. He left when the company went bankrupt. He was jogging up the stairs with a bag of groceries and fell backward and broke his back. He took care of his mom until she passed away in August 2019.[1] He stated that he has liver cirrhosis and that his hands shake. He had 6 weeks of treatment and that was all the insurance would cover. He has a total gym at home that he uses. At his first hearing, the claimant alleged disability secondary to neuropathy and diabetes mellitus. He alleged an inability to climb stairs, bend at the knees or lift heavy weights (8E and 9E). He could lift up to 25 pounds and has difficulty squatting, kneeling and reaching (Id.). Due to nerve damage, he experiences numbness and tingling in his legs and feet (Id.). He also alleged fatigue and falling asleep more often (9E and Hearing Testimony). He can sit no longer than 20 minutes and walk up to one mile, and spends the majority of his day in a recliner (Hearing Testimony).

Despite these symptoms, he is able to assist his mother with basic activities of daily living, including paying bills, making meals, taking her to appointments and grocery shopping (Id.).

(*Id.* at PageID # 56-57).

## 2. *Vocational Expert's Testimony*

The ALJ asked the VE two hypothetical questions.  (ECF Doc. No. 6, PageID # 85-86). First, the ALJ asked the VE to assume a hypothetical individual with Foth's age, education, and work experience. (*Id.*). The ALJ then asked whether the hypothetical individual could perform Foth's past work as a bookkeeper (either as Foth performed it or as customarily performed) if the hypothetical individual was:

limited to light work as defined by the regulations; only occasional climbing of ramps and stairs, no climbing of ladders, ropes and scaffolds, occasional balancing, frequent stopping, frequent kneeling, occasional crouching and crawling; avoid concentrated exposure to unprotected heights and moving mechanical parts.

---

[1] While there was some initial confusion as to the year, Foth testified that his mother passed away in 2018. (ECF Doc. No. 6, PageID # 76, 78).

(*Id.* at PageID # 86). The VE responded that the "hypothetical person could perform work as it's customarily performed, but not as performed in this instance." (*Id.*).

Second, the ALJ asked the VE to "change it to this individual is unable to sit, stand, and walk a total of eight hours in a normal workday without taking frequent unscheduled breaks." (*Id.*). The VE then indicated that this person "has the same postural and environmental limitation [as] the first hypothetical[,]" and asked the VE whether that hypothetical individual could perform Foth's past work. (*Id.*). The VE responded that the hypothetical person could not, and that there are no jobs in the national economy that the hypothetical individual could perform. (*Id.*).

**C.     Relevant Medical Evidence**

The discussion of the medical evidence is not intended to be exhaustive. It includes only those portions of the record cited by the parties in their briefs and/or deemed relevant by the undersigned. Because the primary focus of Foth's Brief on the Merits (ECF Doc. No. 11) relates to the alleged severity of his lumbar spine impairment and his depressive disorder, the discussion is limited accordingly.

### *1.     Foth's Physical Impairments*

Foth argues that the ALJ erroneously discounted Kiin Kim, M.D.'s RFC opinion, which – he argues – is interrelated with the ALJ's error in finding that his lumbar compression fractures and cervical degenerative disease are not severe impairments. (ECF Doc. No. 11, PageID # 3187). Dr. Kim completed a "Treating Source Statement – Physical Conditions" on June 7, 2018, which is a mostly checkbox style form with minimal narrative, explanation, or reference to medical findings. (ECF Doc. No. 6, Exhibit 13F, PageID # 2580-83). Dr. Kim indicated that she had been treating Foth every four to six months for two years for the following conditions: (1) bilateral shoulder impingement; (2) shoulder arthritis; (3) lumbar paraspinal spasm; (4) lumbar arthritis; and (5) diabetic neuropathy. (*Id.* at PageID # 2580).

Dr. Kim then checked boxes indicating that Foth would be "off task" more than 25% of the time, that Foth could pay attention for less than thirty minutes before requiring a break due to his pain and/or medication side effects, and that Foth could be expected to miss work four or more days per month as a result of his impairments. (*Id.*). Regarding Foth's ability to carry and lift, Dr. Kim checked boxes indicating that Foth could frequently lift and carry ten pounds, he could occasionally lift and carry twenty pounds, and he could never lift or carry more than fifty pounds. (*Id.* at PageID # 2581). Dr. Kim based her opinion in this regard on: "x-ray [and] MRI of lumbar spine – arthritic changes [with] spinal canal stenosis[,] shoulder x-ray – arthritis." (*Id.*).

Dr. Kim also checked boxes indicating that Foth could sit for three hours in an eight-hour workday, and that he could stand or walk for less than one hour in an eight-hour workday. (*Id.*). Dr. Kim indicated that her assessment in this regard was supported by Foth's "pain due to above diagnoses[.]" (*Id.*). Dr. Kim also checked a box indicating that Foth does not require the use of a cane or other assistive device to effectively ambulate. (*Id.*).

Regarding Foth's hands, Dr. Kim checked boxes indicating that Foth could continuously reach, finger, and feel with both hands, he could frequently handle with both hands, and he could occasionally push and pull with both hands. (*Id.* at PageID # 2582). Regarding Foth's feet, Dr. Kim checked boxes indicating that Foth could continuously use foot controls with both feet. (*Id.*). Dr. Kim provided no narrative explanation in support of these findings. (*Id.*).

Regarding Foth's postural activities, Dr. Kim checked boxes indicating that Foth could frequently kneel, crouch, crawl, and rotate his head and neck, he could occasionally climb ramps and stairs, balance, and stoop, and he could never climb ladders or scaffolds. (*Id.* at PageID # 2583). Dr. Kim based her opinion in this regard on: "diffuse arthritis in spine (lumber), shoulder impingement syndrome." (*Id.*).

In addition to Dr. Kim's opinion, Foth cites numerous records in his Brief on the Merits

that purportedly support his argument that his lumbar compression fractures and cervical degenerative disease are severe impairments. (ECF Doc. No. 11, PageID # 3190). These records include:

- A Health Information Technology ("HIT") medical report entry dated November 12, 2014, reflecting x-ray results showing a "L2 compression fracture without significant retropulsion[,]" and "otherwise normal alignment and disc space height progression T10 loss of height age uncertain." (ECF Doc. No. 6, Exhibit 1F, PageID # 607);

- A progress note from Dr. Carr dated November 26, 2014, indicating that Foth reported that he had been searching for jobs, but Foth "felt disabled from doing so, since he could likely not be able to interview well in person and could not tell an employer that he could start right away in a full time position[.]" (ECF Doc. No. 6, Exhibit No. 1F, PageID # 570). That progress note also indicates that Foth had mild tenderness over the upper and mid lumbar spine, that Foth was "medically doing better and better[,]" and that part of Foth's plan was to walk more. (*Id.* at PageID # 572);

- A physical therapy progress note dated November 26, 2014, indicating a "grossly rounded posture" when sitting, and tenderness to palpation in the mid/upper lumbar spine. (ECF Doc. No. 6, Exhibit 1F, PageID # 568). That progress note also indicates that Foth had a normal gait, that his prognosis was excellent, and that he had a history of walking up to six miles per day and had a "total gym" at this home. (*Id.* at PageID # 568-69);

- A physical therapy progress note dated December 3, 2014, indicating that Foth reported that he was doing better, and that Foth had walked three-quarters of a mile the day before his appointment. (ECF Doc. No. 6, Exhibit 1F, PageID # 566);

- A physical therapy progress note dated December 10, 2014, indicating that Foth felt "tight" because he "over did things . . . and did a great deal of walking." (ECF Doc. No. 6, Exhibit 1F, PageID # 556);

- A physical therapy progress dated from December 17, 2014, indicating a "grossly rounded posture" when sitting, and tenderness to palpation in the mid/upper lumbar spine. (ECF Doc. No. 6, Exhibit 1F, PageID # 554). That progress note, however, also indicates that Foth had a normal gait, and he was exercising daily. (*Id.*);

- A radiology report dated December 29, 2015, indicating that "[t]here is mild curvature to the thoracic spine with rightward convexity. There is no compression deformity involving superior endplate of T10." (ECF Doc. No. 6, Exhibit 2F, PageID # 672);

- A progress note from Central Specialty Medical Center dated July 17, 2015, indicating that Foth had tenderness to palpation in the lower lumbar spine, a "broad-based gait[,]" and that Foth "can't do tandem gait." (ECF Doc. No. 6, Exhibit 1F, PageID # 528). That progress note also indicates that Foth had full muscle strength, and a "fairly" good range of motion. (*Id.*);

- A radiology report dated May 26, 2016, indicating "[a]ge-indeterminate compression factures of the T10 and L2 vertebral bodies, with approximately 50% height loss[,] and "[m]ild degenerative changes of the lumbar spine[.]" (ECF Doc. No. 6, Exhibit 4F, PageID # 863);

- A clinician note from VA Long Beach Healthcare System dated March 21, 2018, indicating that Foth "recently started walking again for 10 [minutes], will build up to 30 [minutes] and more 2 days per week[.]" (*Id.* at PageID # 2541); and

- A radiology report dated November 29, 2019, indicating "[d]egenerative changes of the lumbar spine and included lower thoracic spine[,]" as well as [m]oderate chronic compression fracture deformity of L2 and mild compression fracture deformity of L1." (ECF Doc. No. 6, Exhibit 18F, PageID # 3122).

(ECF Doc. No. 11, PageID # 3189-90).

## 2. *Foth's Mental Impairments*

In addition to the records regarding his physical impairments, Foth cites to the numerous records that purportedly support his argument that his major depressive disorder is a severe impairment. (ECF Doc. No. 11, PageID # 3191-92). These include:

- A clinician note from Dean Carr, M.D. dated March 5, 2014, regarding Foth's alcohol use wherein Dr. Carr notes that, "[i]f you have depression . . . and it sounded as though this might be the case . . . then therapy for depression is also very important[.]" (ECF Doc. No. 6, Exhibit 16F, PageID # 2719). Foth relies upon this record as his "first diagnos[is] with major depressive disorder" (ECF Doc. No. 11, PageID # 3191), but depression is not listed as a diagnosis (ECF Doc. No. 6, Exhibit 16F, PageID # 2719). Foth also cites another clinician note from March 5, 2014, indicating that Foth reported that "[h]e is tired of feeling bad[,] and that "he does not feel depressed when he has alcohol on board, but late each afternoon he will feel down until he started his evening drinking." (ECF Doc. No. 6, Exhibit 1F, PageID # 585-586). That notes also indicates that Foth planned to start exercising more, and that he walked one mile that day. (*Id.* at PageID # 585);

- A clinician note from John Prate, PA-C dated November 12, 2014, wherein Foth indicated that, after he was laid off, he stopped drinking because he had no job-related stress. (ECF Doc. No. 6, Exhibit 1F, PageID # 573). The assessment from that visit indicated a diagnosis of major depression, but Foth declined a referral to Behavioral Health, and he agreed to follow-up with his primary care physical to consider SSRI versus other modalities. (*Id.* at PageID # 574);

- A clinician note from VA Long Beach Healthcare System dated August 15, 2016, regarding a psychological and alcohol consumption assessment related to his liver issues. (ECF Doc. No. 6, Exhibit 4F, PageID # 1004-05). Foth reported that he last

consumed alcohol at Christmas, that – prior to that – he had been sober for six months, and that he described himself as "functional alcoholic." (*Id.* at PageID # 1005). Foth reported that "he cannot drink due to caretaking responsibilities for his elderly mother." (*Id.*). The clinician note from that appointment indicates that Foth was cooperative, well-groomed, alert and oriented, had a euthymic mood, and had a linear, goal-oriented thought process. (*Id.*); and

- A clinician note from April 26, 2018, related to a fall wherein Foth reported a history of alcohol abuse and requested "consideration for detox[.]" (ECF Doc. No. 6, Exhibit 12F, PageID # 2507-08).

(ECF Doc. No. 11, PageID # 3191-92).

### D.    State Agency Reports

#### *1.    Foth's Physical Impairments*

Dennis Koukol, M.D. reviewed Foth's file and completed a Physical Residual Functional Capacity Assessment on October 20, 2015. (ECF Doc. No. 1A, PageID # 121-23). Dr. Koukol opined that Foth could: (1) occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; (2) stand and/or walk for two hours; (3) sit with normal breaks for about six hours in an eight-hour workday; (4) occasionally climb ramps/stairs and balance; (5) frequently stoop, kneel, crouch, and crawl; and (6) never climb ladder/ropes/scaffolds. (ECF Doc. No. 6, Exhibit 1A, PageID # 122).

Jon Arrow, M.D. reviewed Foth's file and completed a Physical Residual Functional Capacity Assessment on January 20, 2016. (ECF Doc. No. 6, Exhibit 2A, PageID # 135-37). Dr. Arrow opined that Foth could: (1) occasionally lift and/or carry twenty pounds and frequently lift and/or carry ten pounds; (2) stand and/or walk for two hours; (3) sit with normal breaks for about six hours in an eight-hour workday; (4) occasionally climb ramps/stairs, balance, stoop, kneel, crouch, and crawl; and (5) never climb ladder/ropes/scaffolds. (*Id.*).

John Fahlberg, M.D. reviewed Foth's file and completed a Physical Residual Functional Capacity Assessment on May 12, 2016. (ECF Doc. No. 6, Exhibit 5A, PageID # 151-53). Dr. Fahlberg opined that Foth could: (1) occasionally lift and/or carry twenty pounds and frequently

lift and/or carry ten pounds; (2) stand and/or walk for about six hours with normal breaks in an eight-hour workday; (3) sit with normal breaks for about six hours in an eight-hour workday; (4) occasionally climb ramps/stairs, balance, crouch, and crawl; (5) frequently stoop and kneel; and (6) never climb ladders/ropes/scaffolds. (*Id.*).

### 2.    *Foth's Mental Impairments*

Susan Kotler, Ph.D. reviewed Foth's file and opined that Foth's depressive disorder is not a severe impairment on January 25, 2016. (ECF Doc. 6, Exhibit 2A, PageID # 133-34). Timothy Schumacher, Ph.D. reached the same conclusion on May 9, 2016. (ECF Doc. No. 6, Exhibit 5A, PageID # 149-50). Don Johnson, Ph.D. reviewed and agreed with these assessments on October 18, 2017. (ECF Doc. No. 6, Exhibit 6F, PageID # 1435).

## IV.    THE ALJ'S DECISION

The ALJ made the following finding of fact and conclusions of law:

1.    The claimant last met the insured status requirements of the Social Security Act on June 30, 2019.

2.    The claimant did not engage in substantial gainful activity during the period from his alleged onset date of August 28, 2014 through his date last insured of June 30, 2019 (20 CFR 404.1571 et seq.).

3.    Through the date last insured, the claimant had the following severe impairments: peripheral neuropathy; shoulder bursitis; liver cirrhosis; diabetes mellitus; and obesity (20 CFR 404.1520(c)).

4.    Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).

5.    After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 CFR 404.1567(b) except he can lift and carry 20 pounds occasionally and ten pounds frequently, stand and/or walk for six hours in an eight-hour workday, and sit for six hours in an eight-hour workday. He can never climb ladders, ropes or scaffolds. He can occasionally balance, crouch, crawl, and climb ramps or stairs. He can frequently stoop and kneel. He must avoid concentrated exposure to hazards, including moving machinery and unprotected heights. He needs

to alternate between sitting and standing every hour for 5-minutes. He can occasionally reach overhead with the bilateral upper extremities.

6. Through the date last insured, the claimant was capable of performing past relevant work as a bookkeeper. This work did not require the performance of work-related activities precluded by the claimant's residual functional capacity (20 CFR 404.1565).

7. The claimant was not under a disability, as defined in the Social Security Act, at any time from August 28, 2014, the alleged onset date, through June 30, 2019, the date last insured (20 CFR 404.1520(f)).

(ECF Doc. No. 6, PageID # 53-63).

## V.    LAW & ANALYSIS

### A.    <u>Standard of Review</u>

"After the Appeals Council reviews the ALJ's decision, the determination of the council becomes the final decision of the Secretary and is subject to review by this Court." *Olive v. Comm'r of Soc. Sec.*, No. 3:06 CV 1597, 2007 WL 5403416, at *2 (N.D. Ohio Sept. 19, 2007) (citing *Abbott v. Sullivan*, 905 F.2d 918, 922 (6th Cir. 1990); *Mullen v. Bowen*, 800 F.2d 535, 538 (6th Cir. 1986) (*en banc*)). The Court's review "is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards." *Winn v. Comm'r of Soc. Sec.*, 615 F. App. 315, 320 (6th Cir. 2015) (quoting *Cole v. Astrue*, 661 F.3d 931, 937 (6th Cir. 2011)); *see also* 42 U.S.C. § 405(g). "Substantial evidence is defined as 'more than a scintilla of evidence but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007) (quoting *Cutlip v. Sec'y of HHS*, 25 F.3d 284, 286 (6th Cir. 1994)). If the Commissioner's decision is supported by substantial evidence, it must be affirmed, "even if a reviewing court would decide the matter differently[.]" *Cutlip* at 286; *Kinsella v. Schweiker*, 708 F.2d 1058, 1059-60 (6th Cir. 1983).

In addition to considering whether the Commissioner's decision was supported by

substantial evidence, the Court must determine whether the Commissioner applied proper legal standards. Failure of the Commissioner to apply the correct legal standards as promulgated by the regulations is grounds for reversal. *See, e.g.*, *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009); *Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 746 (6th Cir. 2006) ("Even if supported by substantial evidence, however, a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right.").

Finally, a district court cannot uphold an ALJ's decision, even if there "is enough evidence in the record to support the decision, [where] the reasons given by the trier of fact do not build an accurate and logical bridge between the evidence and the result." *Fleischer v. Astrue*, 774 F. Supp. 2d 875, 877 (N.D. Ohio 2011) (quoting *Sarchet v. Chater*, 78 F.3d 305, 307 (7th Cir. 1996) (alteration in original).

B. **Standard for Disability**

The Social Security regulations outline a five-step sequential evaluation process that the ALJ must use in determining whether a claimant is entitled to DIB: (1) whether the claimant is engaged in substantial gainful activity; (2) if not, whether the claimant has a severe impairment or combination of impairments; (3) if so, whether that impairment, or combination of impairments, meets or equals any of the listings in 20 C.F.R. § 404, Subpart P, Appendix 1; (4) if not, whether the claimant can perform her past relevant work in light of his RFC; and (5) if not, whether, based on the claimant's age, education, and work experience, he can perform other work found in the national economy. 20 C.F.R. § 404.1520(a)(4)(i)-(v); *Combs v. Comm'r of Soc. Sec.*, 459 F.3d 640, 642-43 (6th Cir. 2006). The claimant bears the ultimate burden of producing sufficient evidence to prove that he is disabled and, thus, entitled to benefits. 20 C.F.R. § 404.1512(a). Specifically, the claimant has the burden of proof in Steps One through Four. *Walters v. Comm'r*

*of Soc. Sec.*, 127 F.3d 525, 529 (6th Cir. 1997). The burden shifts to the Commissioner at Step Five to establish whether the claimant has the RFC to perform available work in the national economy. *Id.*

    **C.**   **Analysis**

Foth raises two issues for judicial review. First, Foth argues that the ALJ erred by rejecting the RFC opinion of Dr. Kim and by failing to apply the factors outlined in 20 C.F.R. § 404.1527(c). (ECF Doc. No. 11, PageID # 3187). Foth asserts that the ALJ's error in this regard is "interrelated with [the ALJ's error of] failing to find the chronic lumbar compression fractures and cervical degenerative disease to constitute severe impairments at Step 2[.]" (*Id.*). Second, Foth argues that the ALJ erred by not determining that his major depressive disorder is a severe impairment at Step Two. (*Id.* at PageID # 3191). For the following reasons, I conclude that Foth's arguments lack merit.

### *1.  Foth's First Assignment of Error*

As noted, Foth first argues that the ALJ erred by rejecting Dr. Kim's RFC opinion, and by determining that his lumbar spine impairment is not a severe impairment. (ECF Doc. No. 11, PageID # 3187). For the following reasons, I disagree.

#### *i.    RFC & Treating Physician Rule*

Prior to determining whether a claimant can perform his past relevant work at Step Four, an ALJ determines a claimant's RFC by considering all relevant medical and other evidence. 20 C.F.R. § 404.1520(a)(4) ("Before we go from step three to step four, we assess your residual functional capacity."); 20 C.F.R. § 404.1520(e) ("[W]e will assess and make a finding about your [RFC] based on all the relevant medical and other evidence in your case record[.]"). RFC "is the most [a claimant] can still do despite [the claimant's] limitations." 20 C.F.R. § 404.1545(a)(1).

Because Foth filed his application before March 27, 2017, the Social Security

Administration's prior rules governing the evaluation of opinion evidence – known as the "treating physician rule" – apply. *See* 20 C.F.R. § 404.1527(c)(2). The treating physician rule provides that the treating physician's opinion controls if the ALJ finds the opinion "is well-supported by medically acceptable clinical and laboratory diagnostic techniques and is not inconsistent with the other substantial evidence in [the claimant's] case record." *Id.* But "the ALJ is not bound by a treating physician's opinion if there is substantial medical evidence to the contrary." *Tipton v. Comm'r of Soc. Sec.*, 847 F. Appx. 290, 294 (6th Cir. 2021) (citing 20 C.F.R. § 404.1527(c)(2)). In that instance, the ALJ applies the factors found in §§ 404.1527(c)(2)-(6) when determining the weight to give the medical opinion: length of treatment relationship and frequency of examination; nature and extent of the treatment relationship; supportability; consistency; specialization; and other factors which tend to support or contradict the medical opinion.

In all cases, the ALJ is required to "always give good reasons" in the decision for the weight afforded a treating physician's opinion. 20 C.F.R. § 404.1527(c)(2). The ALJ's reasoning "must be 'supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight.'" *Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013) (quoting SSR 96-2p). "This procedural requirement 'ensures that the ALJ applies the treating physician rule and permits meaningful review of the ALJ's application of the rule.'" *Id.* (quoting *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir.2004)). That said, an ALJ's failure to provide "good reasons" may result in harmless error when "the opinions in question are merely checkbox forms – lacking meaningful explanation supporting its conclusions – that fail to reference or incorporate the provider's records and objective findings to permit a reviewing party to provide a more thorough assessment of the opinion[.]" *Hunt v. Comm'r of Soc. Sec.*, No. 1:21-CV-00075-DAR, 2022 WL 4599246, at *2 (N.D. Ohio Sept. 29, 2022); *Pruitt v.*

*Comm'r of Soc. Sec.*, No. 22-5152, 2022 WL 4517094, at *4 (6th Cir. Sept. 28, 2022).

### ii.     Step Two: Severity of Foth's Lumbar Spine Impairment

At Step Two of the sequential evaluation process, an ALJ must determine with a claimant's medically determinable impairment is a "severe" impairment. *See* 20 C.F.R. § 404.1520(a)(4)(ii). A "severe" impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities[.]" 20 C.F.R. § 404.1520(c). "Step two has been described as a '*de minimus* hurdle'; that is, 'an impairment can be considered not severe only if it is a slight abnormality that minimally affects work ability regardless of age, education, and experience.'" *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 243 n.2 (6th Cir. 2007) (quoting *Higgs v. Bowen,* 880 F.2d 860, 862 (6th Cir.1988)).

### iii.     The ALJ's Analysis

The ALJ rejected Dr. Kim's checkbox style RFC assessment, and also determined that Foth's lumbar spine impairment is not a severe impairment. (ECF Doc. 6, PageID # 54.). Regarding the latter, the ALJ explained:

> The claimant alleges disability secondary to back pain associated with a lumbar vertebral fracture (4E and Hearing Testimony). In or around October 2014, the claimant suffered a fall, which resulted in a compression fracture at L2 of the lumbar spine (1F/8, 34, 128). He was treated with physical therapy and, by January 2015, the claimant's low back pain was resolving (1F/32). This finding is supported by the claimant's increased function and decreased pain (1F/32). Overall, he felt his back was 95-97% better (1F/31-32). He exhibited normal gait, rated his pain as zero and was able to lift weights for exercise (1F/31-34). A magnetic resonance imaging scan of the claimant's spine showed L2 compression fracture with moderate anterior height loss and minimal-to-mild posterior disc bulges throughout the lumbar spine, and central annular fissure at L5-S1 (1F/79-80 107-109). There was no evidence of central or foraminal stenosis, or spinal cord findings (1F/10 79). Clinical examinations documented full strength throughout, limited lumbar extension with facet loading, some evidence of paraspinal muscle spasm, tenderness about the lower lumbar spine and negative straight leg raises (1F/41, 4F/97 114-116 222, 8F/92 and 9F/252). While there is evidence the claimant ambulated with an antalgic and wide-based gait, he generally walked with a normal gait and his gait abnormalities were attributed to sensory ataxia due to peripheral neuropathy (1F/4). He was initially treated with physical therapy and able to stand and walk for longer periods, including walking up to three miles per day (1F/32, 4F/146 and 8F/576).

> The claimant's residual symptoms of paraspinal muscle spasm were conservatively treated with muscle relaxants (1F/41 and 8F/466 561). Based on the claimant's positive response to conservative care, minimal clinical examination findings and ability to walk for prolonged periods, the undersigned finds that the claimant's lumbar impairment is not severe.

(*Id.*). When addressing Foth's RFC, the ALJ assigned little weight to Dr. Kim's checkbox style opinion, explaining:

> The treating source statement of Dr. Kiin Kim, is given little weight. She completed a checklist type form, noting that the claimant would be off task more than 25% of the workday, can maintain attention and concentration for under 30 minutes, and would be absent more than 4 days per month. (13F/1). She further opined that the claimant could sit a total of 3 hours and stand/walk less than 1 hour (13F/2). These extreme limitations are inconsistent with the medical evidence of record, as well as the claimant's own testimony. For example, the claimant noted walking two-to-three miles, six days per week (4F/147). Additionally, her statement provides no narrative or objective evidence to support these opinions, outside of an MRI of the lumbar spine and shoulder x-ray. However, only mild arthritis was noted in the shoulders, and exams noted normal back range of motion. While Dr. Kim has a treating relationship with the claimant, she lacks program knowledge, as well as supportability with the record. For these reasons, she is given little weight.

(*Id.* at PageID # 61).

### iv. *Foth's Arguments*

Foth argues that the ALJ erred by rejecting Dr. Kim's opinion because: (1) the ALJ did not apply the factors outlined in 20 C.F.R. § 404.1527(c); (2) the ALJ cited a single page of the record indicating that Foth was walking two to three miles, six days per week; (3) the ALJ noted that Dr. Kim's opinion was supported by an MRI and an x-ray, but the ALJ did not further cite the record; (4) the ALJ erroneously relied upon the fact that the Dr. Kim "lacks program knowledge"; and (5) Foth's lower back issues – including an older T10 fracture and L1 and L2 compression fractures – are well documented in the record. (ECF Doc. No. 11, PageID # 3189-90). Foth asserts that "substantial evidence of record clearly refutes the ALJ's treatment of [his] lumbar spine injuries/degeneration as presenting no more than a minimal impairment." (*Id.* at PageID # 3190). Foth concludes that, [g]iven that this was a severe impairment, Dr. Kim's opinion must be re-

assessed in light of that substantial evidence documenting the severity of the lumbar spine impairment and using the correct factors in 20 CFR 404.1527(c)." (*Id.* at PageID # 3190).

### v.  Analysis

Foth has not established that the ALJ committed reversible error by giving little weight to Dr. Kim's opinion, or by determining that his lumbar spine impairment is not a severe impairment. Regarding Dr. Kim's opinion, the ALJ explained that it is a "checklist type form" that is inconsistent with the medical evidence and Foth's own testimony. (ECF Doc. No. 6, PageID # 61). The ALJ then cited to medical evidence from November 28, 2016, indicating that Foth reported that he "walks between 2-3 miles multiple [times] per week[,]" which the ALJ found to be inconsistent with the extreme limitations in Dr. Kim's RFC assessment. (*Id.* at PageID # 822; ECF Doc. No. 6, Exhibit 4F, PageID # 822). The ALJ also noted that, outside of a citation to an MRI and an x-ray, Dr. Kim did not provide a narrative or any objective evidence to support her opinion. (*Id.*).

Given the checkbox style of Dr. Kim's opinion, as well as the lack of any meaningful explanation supporting her conclusions, any error in the ALJ's failure to specifically address the factors outlined in 20 C.F.R. § 404.1527(c) is harmless. *See Hunt*, No. 1:21-CV-00075-DAR, 2022 WL 4599246, at *2 (N.D. Ohio Sept. 29, 2022); *Pruitt*, No. 22-5152, 2022 WL 4517094, at *4 (6th Cir. Sept. 28, 2022). Moreover, substantial evidence supports the ALJ's RFC assessment. For example, Dr. Fahlberg opined that Foth has the RFC to stand and/or walk for about six hours with normal breaks in an eight-hour workday, and to sit with normal breaks for about six hours in an eight-hour workday. (ECF Doc. No. 6, Exhibit 5A, PageID # 151-53). Additionally, Wenceslao Cabaluna, M.D. examined Foth on behalf of the state agency on January 11, 2016. (ECF Doc. No. 6, Exhibit 3F, PageID # 758). Dr. Cabaluna opined that Foth could sit, stand and/or walk for about six hours in an eight-hour workday, Foth could frequently climb ramps/stairs, stoop, kneel, crouch,

and crawl, and could occasionally climb ladders/scaffolds and balance. (*Id.* at PageID # 766). Charles Murphy, M.D. agreed with these findings on October 19, 2017. (ECF Doc. No. 6, Exhibit 7F, PageID # 1436). Thus, despite Foth's arguments to the contrary, the ALJ supported his RFC assessment with substantial evidence, and the ALJ did not commit reversible error by assigning little weight to Dr. Kim's checkbox style RFC assessment. Accordingly, I recommend affirming the ALJ's decision in this regard.

Regarding the severity of Foth's lumbar spine impairment, Foth has not established that the ALJ's decision lacks substantial support. While Foth cites numerous medical records (outlined in more detail above), those records, when viewed in the context of the record as a whole, do not indicate that Foth's lumbar spine impairment is a severe impairment. For example, Foth cites physical therapy notes indicating that he had a "grossly rounded posture" and tenderness to palpation in the mid/upper lumbar spine in 2014, but those notes also indicate that Foth was improving, that Foth was exercising daily, that Foth was able to walk almost one mile, that Foth had a normal gait, that Foth had a history of walking up to six miles per day, and that Foth had a "total gym" at home. (ECF Doc. No. 6, Exhibit 1F, PageID # 554, 566, 568). By 2015, records indicate that Foth's lower back pain was resolving, and that Foth's prognosis was "[e]xcellent[.]" (ECF Doc. No 6, Exhibit 1F, PageID # 546). By 2016, Foth reported that he walks "many miles per day[,]" and "between 2-3 miles multiple [times] per week." (ECF Doc. No. 6, Exhibit 4F, PageID # 821-22). In 2018, Foth presented with a steady gait, and he had a full range of motion of the neck, back, and shoulders. (ECF Doc. No. 6, Exhibit 17F, PageID # 3040). Additionally, a clinician note from 2019 indicates that Foth owns a total gym, which he uses regularly, and that he likes to walk. (ECF Doc. No. 6, Exhibit 14F, PageID # 2655).

While the records do reflect Foth's history of lower back pain, as well as his L1 and L2 compression fractures (*see, e.g.*, ECF Doc. No. 6, Exhibit 18F, PageID # 3122), Foth has not met

his burden of establishing that the ALJ's decision lacks substantial evidence. *Newman v. Kijakazi*, No. 3:20-CV-00831-JRK, 2021 WL 3684091, at *4 (N.D. Ohio Aug. 4, 2021), *report and recommendation adopted sub nom. Newman v. Comm'r of Soc. Sec.*, No. 3:20 CV 831, 2021 WL 3679557 (N.D. Ohio Aug. 19, 2021) ("[T]he movant bears the burden of demonstrating that the ALJ's analysis *lacks* substantial evidence, not merely that substantial evidence supports h[is] position, too.") (emphasis sic). Accordingly, I recommend affirming the ALJ's decision in this regard.

### 2. Foth's Second Assignment of Error

Next, Foth argues that the ALJ erred by finding that his depressive disorder is not a severe impairment at Step Two. (ECF Doc. No. 11, PageID # 3191). For the following reasons, I disagree.

### i. Step Two: Severity of Foth's Depression

At Step Two of the sequential evaluation process, an ALJ must evaluate a claimant's "symptoms, signs, and laboratory findings" to determine whether the claimant has a "medically determinable mental impairment(s)." 20 C.F.R. § 404.1520a(b)(1). If a claimant has a medically determinable mental impairment, an ALJ "must then rate the degree of functional limitation resulting from the impairment(s)" with respect to "four broad functional areas." 20 C.F.R. §§ 404.1520a(b)(2), (c)(3). The four broad functional areas are also commonly referred to as the "paragraph B" criteria. *See, e.g.*, *Chidsey v. Kijakazi*, No. 1:20-CV-01858, 2022 WL 4599195, at *6. The regulations require that the analysis be addressed in the ALJ decision:

> At the administrative law judge hearing and Appeals Council levels, the written decision must incorporate the pertinent findings and conclusions based on the technique. The decision must show the significant history, including examination and laboratory findings, and the functional limitations that were considered in reaching a conclusion about the severity of the mental impairment(s). The decision must include a specific finding as to the degree of limitation in each of the functional areas described in paragraph (c) of this section.

20 C.F.R. § 404.1520a(e)(4). In sum, the decision must incorporate specific findings as to the

degree of limitation assessed in each of the functional areas.

### ii.    The ALJ's Analysis

The ALJ determined that Foth's medically determinable mental  impairment of major depressive disorder is not a severe impairment. (ECF Doc. No. 6, PageID # 54). The ALJ explained:

> The claimant's medically determinable mental impairment of major depressive disorder does not cause more than minimal limitation in the claimant's ability to perform basic mental work activities and is therefore, non-severe. [sic] functioning are known as the "paragraph B" criteria. A review of the record indicates the claimant was diagnosed with major depressive disorder in August 2015 (1F/8-10). He declined behavioral health services as well as psychotropic medication management (1F/60, 73). Subsequent treatment notes indicate the claimant repeatedly denied mental symptoms (4F/85). Moreover, the claimant's mental status examinations generally documented appropriate or normal mood, appropriate affect, well-groomed appearance, appropriate dress, linear and goal-directed thought process, good and direct eye contact, full alertness, full orientation, appropriate communication, positive attitude, pleasant and cooperative behavior, and non-pressured and normal speech. (1F/460; 8F/576 and 12F/30). He was able to follow complex commands (2F/66). He was described as psychiatrically stable (8F/97). Socially, he regularly talks with his neighbors and can leave his home independently (8E/5). He endorsed being able to follow both spoken and written instructions, and getting along with authority figures very well (8E/6 and 9/E6). He can pay attention up to two hours (9E/6). There is no evidence of a cognitive or memory impairment.
>
> Based on the foregoing, the undersigned finds that the claimant has no limitation in all four areas of mental functioning, including understanding, remembering, or applying information, interacting with others, concentrating, persisting, or maintaining pace, and adapting or managing oneself.

(ECF Doc. No. 6, PageID # 54-55). The ALJ discussed Foth's depressive disorder again during his RFC assessment, explaining:

> As for the opinion evidence, Susan Kotler, Ph.D., Tim Schumacher, Ph.D. and Don Johnson, Ph.D., all State agency psychologists, reviewed the claimant's medical record and submitted Psychiatric Review Technique forms dated January 2016, May 2016 and October 2017, respectively (Exhibits 2A, 5A and 6F). Drs. Kotler, Schumacher and Johnson opined the claimant's depressive disorder is not severe (Id.). While they do not possess a longitudinal treating relationship with the claimant, they possess program knowledge. Based on the claimant's general lack of treatment and subjective complaints, and unremarkable mental status examinations, the undersigned gives great weight to the opinions of Drs. Kotler, Schumacher and

Johnson.

(ECF Doc. 6, PageID # 60).

### iii.        *Foth's Arguments*

In his Brief on the Merits, Foth primarily cites to his history of alcohol abuse as a means to self-medicate. (ECF Doc. No. 11, PageID # 3191-92). Foth argues that, given his documented struggles with depression, the ALJ's conclusion that his depression is not a severe impairment is not support by substantial evidence, and that his limitations related to his depression must be incorporated into the RFC. (*Id.* at PageID # 3192). Foth argues that this is especially important given his past relevant work is skilled, making it more likely to be impacted by mental impairments limiting concentration, focus, and the ability to tolerate day-to-day work stress. (*Id.*).

### iv.        *Analysis*

Foth's argument lacks merit. The ALJ considered the relevant records, addressed the paragraph B criteria, and supported his decision with citations to the record. This included citations to records indicating that Foth's mental status examinations generally documented appropriate or normal mood, appropriate affect, well-groomed appearance, appropriate dress, linear and goal-directed thought process, good and direct eye contact, full alertness, full orientation, appropriate communication, positive attitude, pleasant and cooperative behavior, and non-pressured and normal speech, among other records. (ECF Doc. No. 6, PageID # 55). Foth has not challenged the ALJ's reliance on these medical records. Instead, he cites medical records reflecting his history of alcohol abuse and his diagnosis of depression. But those records do not support a finding that Foth's depression is a severe impairment. *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec.*, 447 F.3d 477, 491 (6th Cir. 2006) (declining to "undertake an open-ended review of the entirety of the administrative record to determine (i) whether it might contain evidence that arguably is inconsistent with the Commissioner's decision, and (ii) if so, whether the Commissioner sufficiently accounted for this evidence."). While the record documents a history of alcohol abuse

and depression, Foth has not demonstrated that the ALJ's conclusion that his depression is not a severe impairment lacks substantial evidence. Accordingly, I recommend that the Court affirms the ALJ's decision in this regard.

## VI.     RECOMMENDATION

Based on the foregoing, I RECOMMEND that the Court AFFIRM the ALJ's decision.

Dated: 12/22/2022

*s/Jennifer Dowdell Armstrong*
Jennifer Dowdell Armstrong
U.S. Magistrate Judge

## VII.    NOTICE TO PARTIES REGARDING OBJECTIONS

Local Rule 72.3(b) of this Court provides:

**Any party may object to a Magistrate Judge's proposed findings, recommendations or report made pursuant to Fed. R. Civ. P. 72(b) within fourteen (14) days after being served with a copy thereof, and failure to file timely objections within the fourteen (14) day period shall constitute a waiver of subsequent review, absent a showing of good cause for such failure**. Such party shall file with the Clerk of Court, and serve on the Magistrate Judge and all parties, written objections which shall specifically identify the portions of the proposed findings, recommendations, or report to which objection is made and the basis for such objections. **Any party may respond to another party's objections within fourteen (14) days after being served with a copy thereof.** The District Judge to whom the case was assigned shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made and may accept, reject, or modify, in whole or in part, the findings or recommendations made by the Magistrate Judge. The District Judge need conduct a new hearing only in such District Judge's discretion or where required by law, and may consider the record developed before the Magistrate Judge, making a determination on the basis of the record. The District Judge may also receive further evidence, recall witnesses or recommit the matter to the Magistrate Judge with instructions.

*Id.* (emphasis added).

Failure to file objections within the specified time may result in the forfeiture or waiver of the right to raise the issue on appeal either to the district judge or in a subsequent appeal to the United States Court of Appeals, depending on how or whether the party responds to the report and

recommendation. *Berkshire v. Dahl*, 928 F.3d 520, 530 (6th Cir. 2019). Objections must be specific and not merely indicate a general objection to the entirety of the report and recommendation; a general objection has the same effect as would a failure to object. *Howard v. Sec'y of Health and Hum. Servs.*, 932 F.2d 505, 509 (6th Cir. 1991).

Stated differently, objections should focus on specific concerns and not merely restate the arguments in briefs submitted to the magistrate judge. "A reexamination of the exact same argument that was presented to the Magistrate Judge without specific objections 'wastes judicial resources rather than saving them, and runs contrary to the purpose of the Magistrates Act.'" *Overholt v. Green*, No. 1:17-CV-00186, 2018 WL 3018175, *2 (W.D. Ky. June 15, 2018) (quoting *Howard*). The failure to assert specific objections may in rare cases be excused in the interest of justice. *See United States v. Wandahsega*, 924 F.3d 868, 878-79 (6th Cir. 2019).